# Tips, Complaints, and Referrals
Summary Page - Submitted Externally

Submission Number 16631-070-509-259 was submitted on Tuesday, September 13, 2022 at 07:11:46 PM EDT

This PDF was generated on Tuesday, September 13, 2022 at 07:12:20 PM EDT

Thank you for contacting the United States Securities and Exchange Commission.  This automated response confirms that your submission has been received successfully.  We are always interested in hearing from the public, and your submission will be given careful consideration in view of the Commission's overall responsibilities under the federal securities laws.  Please note, however, that it is the Commission's policy to conduct its investigations on a non-public basis in order to preserve the integrity of its investigative process.  Subject to the provisions of the Freedom of Information Act, we cannot disclose to you any information which we may gather, nor can we confirm the existence or non-existence of an investigation, unless such information is made a matter of public record in proceedings brought before the Commission or the courts.  Therefore, this may be the only response that you receive.  If you want to learn more about how the Commission handles inquiries or complaints, please visit http://www.sec.gov/complaint/info_tipscomplaint.shtml.

## What is your complaint about?

Q: Please select the option that best describes your complaint.

A:  Material misstatement or omission in a company's public filings or financial statements, or a failure to file

Q: Please select the specific category that best describes your complaint.

A:  False/misleading press release

Q: Is this supplemental information to a previous complaint?

A:  No

Q: In your own words, describe the conduct or situation you are complaining about.

A: Asbury Automotive Group has set an annual revenue target of $32 billion for 2025 up from about $15.3 billion in 2022. It cites Clicklane, its supposedly "100% online" digital sales channel, as a key driver of this growth, predicting $8 billion, or 25%, of the anticipated $32 billion will come from Clicklane. But its numerous statements in SEC filings and press releases about Clicklane, and related financial reports/statements, are simply false. For example: -Asbury says Clicklane is 100% online, but it's not. In states that require wet signatures on documents, such as Texas, Asbury voids the online signatures and the customer signs all new paperwork by hand upon delivery of the

documents. -Asbury says the average cash purchase takes 8 minutes and financed purchase takes 14 minutes on Clicklane, but both take far longer. -Asbury says 92% of Clicklane deals are "incremental"--i.e. customers Asbury would not otherwise have had, but the percentage is grossly inflated. The purpose of these misstatements is to give the false impression that Asbury has a competitive digital advantage that it does not have, and the effect is an inflated share price. Moreover, there is a concerted effort to improperly inflate the volume of Clicklane deals by misclassifying deals from other channels as though they had happened online. This is occurring in at least the Park Place branded dealerships, of which there are eight, and which constitute nearly 10% of the dealerships currently using Clicklane. Included with this submission is a process document from one of the Park Place stores (Arlington), describing the three types of transactions that can be classified as Clicklane deals, two of which expressly funnel in-person customers into Clicklane deals. The process for re/mis-classifying deals as Clicklane deals works like this: -First, an entry is made in the customer-relationship-management ("CRM") software for a potential customer from a sales channel other than Clicklane (such as a walk-in). -Second, a sales persons guides a customer through, or directs a customer to, the Clicklane process for purchasing a car through the web, which creates a second CRM entry. -Third, once a car is selected, a manager merges the non-Clicklane entry into the Clicklane entry, so that only one CRM entry remains--a Clicklane entry. -Fourth, and finally, a manager changes the "sales person" in the system to "Clicklane," which results in the deal being booked for accounting purposes as a Clicklane deal, even though the sales lead came from a different source. This misclassifications of deals is encouraged by a compensation system that rewards General Managers and director-level employees based on Clicklane performance metrics, all of whom stress the importance of Clicklane deals to salespeople who are keenly aware of Asbury's intense focus on Clicklane as its supposedly 100% online sales channel. Management uses the inflated Clicklane numbers in earnings releases, earnings calls, and investor presentations to show that Asbury's direct online purchase tool is far more successful than it is, generating a large and growing share of sales that significantly outpaces reality. In particular, see slides 15-18 of the July 2022 Investor Relations Presentation, which is included in this submission. The intent is to represent Asbury as more competitive with direct online models such as Carvana and Vroom than it really is. The materially misleading statements or omissions referenced above and ones like them can be found in Asbury's earnings press releases for Q1 and Q2 2022, dated April 28, 2022, and July 28, 2022, respectively; Asbury's 10-Ks for the fiscal years ending December 31, 2020 and December 31, 2021; and the July 2022 Investor Relations Presentation--all of which are included with this submission.


Q: Are you having or have you had difficulty getting access to your funds or securities?

A: No


Q: Did you suffer a loss?

A: No


Q: When did you become aware of the conduct? (mm/dd/yyyy)

A: 01/21/2022


Q: When did the conduct begin? (mm/dd/yyyy)

A: 01/21/2022

Q: Is the conduct ongoing?

A: Yes

Q: Has the individual or firm acknowledged the conduct?

A: Unknown

Q: How did you learn about the conduct? You may select more than one answer.

A: Account statements; Conversations; Internal business documents; Publicly available information; SEC filings

Q: Have you taken any action regarding your complaint? You may select more than one answer.

A: Complained to firm; Other

Q: Provide details.

A: Retained an attorney and sought advice.

## Who are you complaining about?

Subject # 1

Q: Are you complaining about a person or a firm?

A: Firm

Q: Select the title that best describes the person or firm that you are complaining about.

A: Publicly held company

Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: Yes

Q: How are you or were you associated with the person or firm you are complaining about?

A: Worked as a New Car Sales Manager for a car dealership owned by the company.

Q: Identifier Type

A: Ticker Symbol

Q: Ticker Symbol

A: ABG

Q: Are you a current or former Employee, Officer, Partner, or Employee Director of any entity you are complaining about?

A: Yes

Q: Check all that apply.

A: Employee

Q: Are you a current or former Non-Employee Director, Consultant, Contractor or Trustee of any entity you are complaining about?

A: No

Q: Firm Name

A: ASBURY AUTOMOTIVE GROUP INC

Q: Street Address

A: 2905 Premiere Parkway

Q: Address (Continued)

A: Suite 300

Q: Zip / Postal Code

A: 30097

Q: City

A: DULUTH

Q: State / Province

A: GA

Q: Country

A: US

Q: Work Phone

A: (770) 418-8200

Q: Email Address

A: info@asburyauto.com

Q: Website

A: https://www.asburyauto.com/

## Which investment products are involved?

Q: Select the type of product involved in your complaint.

A: Equities (e.g., common stock, preferred stock)

Q: Please select the category that best describes the security product.

A: Common stock (exchange-traded stock)

Q: Enter the ticker symbol, if known.

A: ABG

Q: Enter the product name(s)

A: all securities of ABG are affected

## About you

Submitter # 1

Q: Are you filing this tip under the SEC's whistleblower program?

A: Yes

Q: Are you an attorney filling out this form on behalf of an anonymous whistleblower client who is seeking an award?

A: No

Q: Title

A: Mr

Q: First Name

A: Michael

Q: Middle Name

A: David

Q: Last Name

A: Tupac

Q: Country

A: USA

Q: Mobile Telephone

A: 214-205-2725

Q: Email Address

A: mtupac@msn.com

Q: What is the best way to reach you?

A: Phone

Q: Are you represented by an attorney in connection with this matter, or would you like to provide your attorney's contact information?

A: Yes

Q: Attorney Title

A: Mr

Q: Attorney First Name

A: R. Kent

Q: Attorney Last Name

A: Piacenti

Q: Attorney Firm Name

A: Law Office of R. Kent Piacenti, PLLC

Q: Attorney Street Address

A: 8350 N. Central Expy

Q: Attorney Address (Continued)

A: Suite 1900

Q: Attorney Zip / Postal Code

A: 75206

Q: Attorney City

A: DALLAS

Q: Attorney State / Province

A: TX

Q: Attorney Country

A: USA

Q: Attorney Work Telephone

A: 2148883639

Q: Attorney Fax Telephone

A: 214-396-2025

Q: Attorney Email Address

A: kent@piacentilaw.com

Q: Select the profession that best represents you.

A: Other

Q: For Other, please specify.

A: Sales Professional

Q: Have you reported the matter at issue in this submission to your supervisor, compliance office, whistleblower hotline, ombudsman, or any other available mechanism for reporting possible violations at any entity you are complaining about?

A: Yes

Q: If you answered "Yes," please provide details.

A: I directed my attorney to have a phone conversation with company counsel about "accounting and compliance concerns," but company counsel would either end a phone conversation with him prematurely or otherwise ignore or delay his requests for a call. My attorney reported the matter on my behalf in writing by email dated September 8, 2022.

Q: Were you retaliated against for reporting the matter at issue in this submission either internally at the entity or to a regulator?

A: No

Q: Has anyone taken steps to prevent you from reporting this violation to the SEC?

A: Yes

Q: If you answered "Yes," please provide details.

A: I am subject to an arbitration agreement that expressly governs disputes relating to whistleblowing activity but does not contain a carveout permitting employees to directly contact the SEC. The agreement is dated October 1, 2010 and was still being provided to new employees at least as late as late 2020.

Q: Are documents or other information being submitted that could potentially identify the whistleblower?

A: Yes

Q: Identify with particularity any documents or other information in your submission that you believe could reasonably be expected to reveal your identity.

A: The following could identify me: (1) the document titled Clicklane Management Process, with the letterhead of Park Place Arlington and approval date January 21, 2022; and (2) my attorney's identification of the issues raised in this report to company counsel, Dean Calloway.


Q: Does the whistleblower want to be eligible to apply for a whistleblower award?

A: Yes


Q: 1. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer or employee of the Department of Justice; the Securities and Exchange Commission; the Comptroller of the Currency; the Board of Governors of the Federal Reserve System; the Federal Deposit Insurance Corporation; the Office of Thrift Supervision; the Public Company Accounting Oversight Board; any law enforcement organization; or any national securities exchange, registered securities association, registered clearing agency, or the Municipal Securities Rulemaking Board?

A: No


Q: 2. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority as that term is defined in Section 3(a)(52) of the Securities Exchange Act of 1934 (15 U.S.C. Section 78c(a)(52))?

A: No


Q: 3. Did you acquire the information being submitted to us through the performance of an engagement required under the federal securities laws by an independent public accountant?

A: No


Q: 4. Are you providing this information pursuant to a cooperation agreement with the SEC or another agency or organization?

A: No


Q: 5. Are you a spouse, parent, child, or sibling of a member or employee of the SEC, or do you reside in the same household as a member or employee of the SEC?

A: No


Q: 6. Have you or anyone representing you received any request, inquiry or demand that relates to the subject matter of your submission (i) from the SEC; (ii) in connection with an investigation, inspection or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or (iii) in connection with an investigation by Congress, any other authority of the federal government, or a state Attorney General or securities regulatory authority?

A: No


Q: 7. Are you currently a subject or target of a criminal investigation, or have you been convicted of a criminal violation, in connection with the information you are submitting to the SEC?

A: No


Q: 8. Did you acquire the information being provided to us from any person described in Questions 1 through 7?

A: No


Q: I declare under penalty of perjury under the laws of the United States that the information contained herein is true, correct and complete to the best of my knowledge, information, and belief. I fully understand that I may be subject to prosecution and ineligible for a whistleblower award if, in my submission of information, my other dealings with the SEC, or my dealings with another authority in connection with a related action, I knowingly and willfully make any false, fictitious, or fraudulent statements or representations, or use any false writing or document knowing that the writing or document contains any false, fictitious, or fraudulent statement or entry.

A: Agree

## Documents

| Document Name | Document Type |
| --- | --- |
| 2022-04-28 Q1 Earning Announcement.pdf | application/pdf |
| 2022-07-28 Q2 Earnings Announcement.pdf | application/pdf |
| Asbury 10-K FY 2020.pdf | application/pdf |
| Asbury 10-K for FY 2021.pdf | application/pdf |
| 2Q22_IR_Presentation-FINAL.pdf | application/pdf |
| Clicklane Management Process.docx | application/vnd.openxmlformats-officedocument.wordprocessingml.document |