# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL TUPAC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 3:24-CV-104-E |
| | § | |
| ASBURY AUTOMOTIVE GROUP, | § | |
| INC.; ASBURY ARLINGTON MB, | § | |
| LLC; and MALCOLM GAGE, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)</u>

Defendants Asbury Automotive Group, Inc.; Asbury Arlington MB, LLC; and Malcolm Gage (collectively "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiff Michael Tupac's ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND PRELIMINARY STATEMENT ..........................1

II. FACTUAL BACKGROUND..........................................................................2

 A. Asbury Automotive Group & the Dealership ......................................2

 B. Plaintiff's Allegations and Reports of Purported Misconduct.............3

 C. Plaintiff's Termination .........................................................................6

III. PROCEDURAL BACKGROUND .................................................................6

IV. STATEMENT OF THE ISSUES ...................................................................7

V. STANDARD OF REVIEW ............................................................................8

VI. ARGUMENT..................................................................................................8

 A. Plaintiff fails to plead sufficient facts to plausibly allege that he engaged in protected activity.............................................................10

  1. Plaintiff's belief that Defendants committed securities fraud or fraud against Asbury shareholders was not objectively reasonable.................................................................11

   (a) Plaintiff makes no substantive allegation that the purported fraud occurred at other dealerships...............12

   (b) It was not objectively reasonable for Plaintiff to believe that misconduct (even if) occurring at one dealership was material to Asbury so as to indicate fraud on a corporate level .............................................16

  2. Plaintiff has not alleged sufficient facts to plausibly allege that the purported misconduct was committed with the intent to defraud Asbury's shareholders. ...........................21

VII. CONCLUSION.............................................................................................23

# TABLE OF AUTHORITIES

**Page**

CASES

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
    915 F.3d 975 (5th Cir. 2019) ...........................................................................15

*Allen v. Admin. Rev. Bd.*,
    514 F.3d 468 (5th Cir. 2008) ..........................................................9, 10, 11, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................8

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) ...........................................................................2, 8

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988).........................................................................18, 19, 20

*Beacom v. Oracle America, Inc.*,
    825 F.3d 376 (8th Cir. 2016) ......................................................................19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................8, 16

*Brown v. Colonial Sav. F.A.*,
    No. 4:16-CV-884-A, 2017 WL 1080937 (N.D. Tex. Mar. 21, 2017)...............16

*Crane v. Lithia TO, Inc.*,
    No. MO-13-CV-016, 2014 WL 11600907 (W.D. Tex. Sept. 3,
    2014) ...............................................................................................................10

*Day v. Staples, Inc.*,
    555 F.3d 42 (1st Cir. 2009)...........................................................................18

*G.A. Thompson & Co., Inc. v. Partridge*,
    636 F.2d 945 (5th Cir. 1981) ...........................................................................22

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012)...............................................................2

*Janus Cap. Grp., Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011) ..................................................................................22

*Livingston v. Wyeth, Inc.,*
    520 F.3d 344 (4th Cir. 2008) ...................................................................18

*Lovelace v. Software Spectrum Inc.,*
    78 F.3d 1015 (5th Cir. 1996) .........................................................2, 20, 22

*Rocheleau v. Microsemi Corp., Inc.,*
    680 F. App'x 533 (9th Cir. 2017) ............................................................18

*Ronnie v. Off. Depot, LLC,*
    81 F.4th 1345 (11th Cir. 2023) ..................................................12, 16, 17

*Sequeira v. KB Home,*
    716 F. Supp. 2d 539 (S.D. Tex. 2009) .....................................................21

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.,*
    365 F.3d 353 (5th Cir. 2004) ...................................................................22

*Tuchman v. DSC Commc'ns Corp.,*
    14 F.3d 1061 (5th Cir. 1994) ...................................................................12

**STATUTES**

15 U.S.C. § 78t(a) ...........................................................................................22

18 U.S.C. § 1514A ....................................................................................passim

**OTHER AUTHORITIES**

17 C.F.R. § 230.405 ........................................................................................22

Fed. R. Civ. P. 12(b)(6)..............................................................................passim

Fed. R. Civ. P. 8 ....................................................................................12, 23

iii

## I.      INTRODUCTION AND PRELIMINARY STATEMENT

This case is about one employee, employed by one car dealership, who claims to have observed conduct at that dealership that he alleges somehow amounted to securities and shareholder fraud by the dealership's multibillion dollar corporate parent company.  The employee reported his concerns to the company and the Securities and Exchange Commission ("SEC"), and later lost his job at the dealership.  While Plaintiff claims that his termination amounted to retaliation in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), that claim fails for at least two independent reasons.

***First***, SOX does not protect individuals who report conduct if the individual lacked an objectively reasonable belief that the conduct constituted violations of federal securities law.  Quite the opposite, SOX only protects individuals who can demonstrate, among other things, an objectively reasonable belief that the alleged conduct constituted violations of federal securities laws.  Plaintiff's claims here, based only on speculation from his limited view at 1 of the 139 car dealerships owned by Defendant Asbury Automotive Group, Inc., during the relevant period, do not meet SOX's objectively reasonable standard and should be dismissed.  ***Second***, Plaintiff has not made any allegation that the purported fraud or misconduct (again, assuming that it occurred) was committed with an intent to defraud Asbury shareholders, as is required under Fifth Circuit precedent.

## II.   FACTUAL BACKGROUND

### A.   Asbury Automotive Group & the Dealership

Defendant Asbury Automotive Group, Inc., ("Asbury") is a Fortune 500 company and one of the largest franchised automotive retailers in the United States. During 2022 (the time period relevant to Plaintiff's allegations), Asbury owned and operated 139 new vehicle dealerships (of 31 brands of automobiles) across 14 states, as well as 32 collision centers, 7 stand-alone used vehicle dealerships, 1 used vehicle wholesale business, 1 auto auction, and Total Care Auto, Powered by Landcar (Asbury's finance and insurance ("F&I") product provider).[1]   In fiscal year 2022, Asbury recorded total consolidated revenue of $15.43 billion.[2]

Plaintiff's allegations here arise from *one* of Asbury's dealerships: Park Place Motorcars Arlington ("the Dealership"), operated by Defendant Asbury Arlington MB, LLC.[3]   The Dealership is located in Arlington, Texas, and is part of a group of dealerships known as Park Place Motorcars (the "Park Place Group") that Asbury

---

[1] *See* Ex. 1, Asbury Auto. Grp., Inc., Annual Report (Form 10-K) (Mar. 1, 2023) at 6.   "[I]n securities cases, courts may take judicial notice of the contents of public disclosure documents that the law requires be filed with governmental agencies, such as the SEC, and that are actually filed with the agency." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 745 (S.D. Tex. 2012) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n. 1 (5th Cir. 1996)).   As of December 31, 2023, Asbury owned and operated 158 dealership locations (representing 31 brands of automobiles), 37 collision centers, as well as a Total Care Auto business and an F&I product provider across 16 states.   *See* Ex. 2, Asbury Auto. Grp., Inc., Annual Report (Form 10-K) (Feb. 29, 2024) at 6.   Asbury employs approximately 15,000 full-time and part-time employees, *id.* at 15, and recorded $14.80 billion in consolidated revenue in 2023, *id.* at 37.

[2] Ex. 1, Asbury Auto. Grp., Inc., Annual Report (Form 10-K) (Mar. 1, 2023) at 35.

[3] For purposes of this motion, Defendants recount the facts as alleged in Plaintiff's Amended Complaint and accept them as true, as they must on Rule 12(b)(6) review.   *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

acquired in 2020.  Am. Compl. ¶ 14.  In 2022, the Park Place Group included nine dealerships.[4]

Plaintiff began working as a New Car Sales Manager at the Dealership in late 2020.  Am. Compl. ¶ 18.  He reported to the New Vehicle Sales Director, who in turn reported to Defendant Malcolm Gage, the General Manager of the Dealership.  *Id*.

In December 2020, Asbury announced a new program called "Clicklane" that allows customers to purchase a car "100% online" through its dealerships, including the Dealership.  *Id*. ¶ 15.  Clicklane allows customers to shop for new or used vehicles, finance their vehicle purchase, trade-in their existing vehicle, and schedule delivery of their newly purchased vehicle entirely online.[5]  Also in December 2020, Asbury announced its strategic plan for revenue growth "to reach $20 billion of revenue by 2025" and "[a]dding an incremental $5 billion of revenue through the new Clicklane platform."[6]  Asbury later "updated [that] strategic growth plan to reflect [the] new target of $32 billion in revenue in 2025."  *Id.* ¶ 20.

### B.    Plaintiff's Allegations and Reports of Purported Misconduct

In 2022, Plaintiff allegedly "observed and reported several instances of serious misconduct" that he claims were committed by the Dealership's managers

---

[4] Ex. 1, Asbury Auto. Grp. Inc., Annual Report (Form 10-K) (Mar. 1, 2023) at 8.  The Amended Complaint alleges that the Park Place Group consisted of 8 dealerships.  *See* Am. Compl. ¶ 41.

[5] Ex. 1, Asbury Auto. Grp. Inc., Annual Report (Form 10-K) (Mar. 1, 2023) at 11.

[6] Ex. 3, Asbury Auto. Grp. Inc., Current Report (Form 8-K) (Dec. 2, 2020) at 6; *see also* Am. Compl. ¶¶ 16–17.

and directors, including Mr. Gage. *Id.* ¶¶ 21–27.  On July 18, 2022, Plaintiff, through counsel, sent a letter to Asbury's Chief Human Resource Officer ("CHRO") recounting the purported misconduct he claims to have observed. *Id.* ¶¶ 28–29. Specifically, Plaintiff contended that Asbury engaged in a scheme to inflate the volume of sales reported through Clicklane by converting sales completed by salespeople for walk-in customers ("traditional" sales) into online Clicklane sales. *Id.* ¶¶ 22–26.  According to Plaintiff, Asbury perpetrated this scheme by "requir[ing]" managers "to alter [Asbury] records to make non-Clicklane customers appear to be true online purchasers[,]" and by permitting managers and directors "who approved each deal" to "remove their initials" from the sales record and "designate the deal as 'Clicklane.'" *Id.* ¶¶ 24–25.  Plaintiff also alleged that Mr. Gage had a "common practice" of "instructing" employees "to book sales either for the end of one month or the beginning of the next, depending on which looked better for the store's numbers or improved [Mr. Gage's] compensation." *Id.* ¶ 26.  Upon receipt of Plaintiff's report, Asbury's CHRO referred Plaintiff to Asbury's Associate General Counsel. *Id.* ¶ 29.

About two months later, on September 9, 2022, Plaintiff's counsel emailed Asbury's Associate General Counsel alleging "incidences of suspected misconduct," including the "falsif[ication]" of the Dealership's "books and records" under Mr. Gage's "direct[ion]," regular "manipulat[ion of] . . . customer satisfaction index

4

scores by providing free equipment to customers who gave [the Dealership] poor marks in exchange for redoing or revising their satisfaction surveys," and a purported "coordinated effort among at least the Park Place dealerships to improperly pump up the sales volume attributable to . . . Clicklane[] by reclassifying traditional, in-person sales as Clicklane deals[.]"  *Id.* ¶ 33.  Plaintiff's counsel did not provide any specific examples of these categories of misconduct or point to any specific incident in which this misconduct occurred.  *See id.*, Ex. 3 at 4–5.  According to Plaintiff, based on the activities he allegedly observed at the Dealership, Asbury (the ultimate parent company) "report[ed] unrealistic sales data in press releases and during quarterly calls with analysts and investors."  *Id.* ¶ 33.  He contends that he believed this purported misconduct constituted securities fraud and shareholder fraud.  *Id.* ¶¶ 21–27.

On September 14, 2022, Plaintiff's counsel made additional accusations to Asbury's Associate General Counsel and supplied supposed "evidence" of the purported misconduct.  *Id.* ¶¶ 36–37.  In particular, he claimed that Asbury hatched a "retaliatory plan to terminate" Plaintiff's employment and "replace" him with another employee.  *Id.* ¶ 37(1).  He also alleged that the purported misconduct he observed relating to Clicklane's "100% online" functionality rendered Asbury's financial statements "materially misleading."  *Id.* ¶ 37(2)–(3).

Plaintiff submitted a report to the SEC on September 13, 2022. *Id.* ¶ 40. He contends that, upon information and his belief, "the SEC launched a full investigation of Asbury shortly thereafter." *Id.* ¶¶ 40–43.

### C.    Plaintiff's Termination

Plaintiff alleges that, in response to his internal complaints and report to the SEC, Asbury engaged in a "campaign of retaliation" through increased scrutiny on his work and an investigation into Plaintiff's "harassment" of fellow employees related to his concerns about Clicklane. *Id.* ¶¶ 45–48, 50–54. Plaintiff also claims that Asbury accused him of removing confidential information from the Dealership and denied him a promotion to General Manager of the Dealership—a promotion for which Mr. Gage supposedly encouraged Plaintiff to apply. *See id.* ¶¶ 53, 59–65.

Mr. Gage notified Plaintiff that he was terminated from employment on November 14, 2022, for, according to Plaintiff, "unspecified misconduct." *Id.* ¶ 66.

## III.    PROCEDURAL BACKGROUND

Pursuant to 18 U.S.C. § 1514A(b)(1), Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA") on January 12, 2023. *Id.* ¶ 7. Three months later, Plaintiff requested that OSHA terminate its investigation into his complaint and "issue findings based on its limited investigatory record." *Id.* ¶ 8. OSHA granted that request and dismissed his complaint on April 18, 2023. *Id.*

¶ 9.  Plaintiff then initiated this lawsuit by filing the Complaint on January 13, 2024.
*See* Compl. (D.E. 1).

As required by the Court's Standing Order, Defendants' counsel conferred with Plaintiff's counsel about the deficiencies in the Complaint that would be grounds for a motion to dismiss.  Thereafter, Plaintiff filed his Amended Complaint on April 12, 2024.   The Amended Complaint, however, does not cure those deficiencies and is subject to dismissal, as explained in detail below.  Plaintiff's Amended Complaint advances a single cause of action against all Defendants: retaliation in violation of SOX, 18 U.S.C. § 1514A.  Am. Compl. ¶¶ 97–110.

## IV.   STATEMENT OF THE ISSUES

1.     Whether Plaintiff pled sufficient facts to plausibly allege that he had an objectively reasonable belief that Defendants committed securities fraud or fraud against its shareholders by allegedly engaging in misconduct, including accounting falsification, inflating sales data attributable to Clicklane, and manipulation of customer satisfaction scores at a single dealership, such that Plaintiff engaged in conduct protected by the anti-retaliation provisions of SOX.

2.     Whether Plaintiff pled sufficient facts to plausibly allege that Defendants committed misconduct with an intent to defraud Asbury

shareholders, such that he engaged in conduct protected by the anti-retaliation provisions of SOX.

## V.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Procedure 12(b)(6) permits a district court, upon a motion, to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion, a district court must accept all well-pled facts as true and view them in the light most favorable to the non-moving party. *Baker*, 75 F.3d at 196. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, a plaintiff must plead specific facts that "state a claim to relief that is plausible on its face," not mere conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

## VI.     ARGUMENT

Section 1514A of SOX creates a private cause of action for employees of publicly traded companies who are retaliated against for engaging in certain protected activity. It provides that a publicly traded company may not

> discharge, demote, suspend, threaten, harass, or in any other manner
> discriminate against an employee . . . because of any lawful act done by
> the employee . . . to provide information, . . . regarding any conduct
> which the employee reasonably believes constitutes . . . [mail fraud,

8

> wire fraud, bank fraud, or securities fraud], [or violates] any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to . . . (A) a Federal regulatory or law enforcement agency; (B) any Member of Congress or any committee of Congress; or (C) a person with supervisory authority over the employee.

18 U.S.C. § 1514A(a). To prevail on a claim for retaliation under § 1514A, "an employee must prove by the preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008).

Plaintiff, however, fails to plead sufficient facts to plausibly allege that he "engaged in protected activity" (*i.e.*, the first element) for at least two reasons. ***First***, it was not objectively reasonable for Plaintiff to believe that Defendants committed securities fraud or fraud upon Asbury shareholders, as is required by controlling Fifth Circuit cases. ***Second***, Plaintiff has not made any allegation that the Defendants committed the purported fraud or misconduct with the intent to defraud Asbury shareholders, as also required under Fifth Circuit precedent. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Amended

Complaint with prejudice for failure to state a claim upon which relief may be granted.[7]

### A. Plaintiff fails to plead sufficient facts to plausibly allege that he engaged in protected activity.

The first element of a SOX retaliation claim—engagement in protected activity—requires that the employee "reasonably believe[]" that the complained-of conduct constitutes a violation of one of the six enumerated categories: mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the SEC, or fraud against shareholders. 18 U.S.C § 1514A. Here, Plaintiff claims that the purported conduct constitutes securities fraud and fraud against Asbury shareholders. To satisfy the reasonable-belief standard, the Fifth Circuit has held that a plaintiff must demonstrate that his belief was *both* objectively *and* subjectively reasonable. *Allen*, 514 F.3d at 477.

Objective reasonableness considers whether the belief would be held by "a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id*. The relevant time period for the employee's belief is the time of reporting of the purported fraud. *See Crane v. Lithia TO, Inc.*, No. MO-13-CV-016, 2014 WL 11600907, at *6 (W.D. Tex. Sept. 3, 2014).

---

[7] Defendants also maintain that Plaintiff cannot establish the other *prima facie* elements of a SOX retaliation claim as a matter of law.

Here, the relevant time period begins in July 2022 when Plaintiff contacted Asbury's CHRO and made allegations of purported securities fraud.  Am. Compl. ¶¶ 28–29.

The Fifth Circuit has noted that while "the objective reasonableness of an employee's belief cannot be decided as a matter of law if there is a genuine issue of material fact," it "***can*** be decided as a matter of law in some cases." *Allen*, 514 F.3d at 477 (emphasis added).   This is one such case.

> **1.     Plaintiff's belief that Defendants committed securities fraud or fraud against Asbury shareholders was not objectively reasonable.**

Plaintiff's belief that Defendants committed securities or shareholder fraud was objectively unreasonable.  ***First***, Plaintiff makes no allegation supported by facts or firsthand knowledge (as opposed to pure speculation) that the conduct he allegedly observed at the Dealership occurred at any other Asbury dealership anywhere in the country, or even at another dealership within the Park Place Group. Instead, the factual allegations in the Amended Complaint, as well as the materials attached to the Amended Complaint, exclusively focus on practices specific to the Dealership at which Plaintiff was employed.  *See, e.g.*, Am. Compl. ¶¶ 33, 36, 103; Ex. 3.  ***Second***, Plaintiff pleads no facts (let alone well-pled facts) demonstrating that it was objectively reasonable for him to believe that misconduct he believed was occurring at one dealership or, at most, one dealership group, was sufficiently material to indicate fraud on a corporate-parent level.  Any such allegations are

11

conclusory and speculative contentions to that end.  Rule 8 requires more than such conclusory allegations and speculation to survive Rule 12(b)(6) scrutiny.  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations . . . We will . . . not accept as true conclusory allegations or unwarranted deductions of fact." (quotation omitted)); *see also Ronnie v. Off. Depot, LLC*, 81 F.4th 1345, 1351 (11th Cir. 2023) ("Mere speculation or suspicion is insufficient to establish a genuine issue of material fact as to reasonable belief.").

> (a)  *Plaintiff makes no substantive allegation that the purported fraud occurred at other dealerships.*

Plaintiff's allegations in the Amended Complaint focus on actions exclusively at the Dealership where he was employed.  For instance, Plaintiff alleges that in his September 2022 internal report of purported misconduct, he informed Asbury that he had observed "falsif[ication of] the ***Dealership's*** books and records by recording sales in months they did not occur to make the ***Dealership's*** performance look better than it was[.]"  Am. Compl. ¶ 33 (emphasis added).  He also alleges that "***[s]tore management*** regularly manipulated the customer satisfaction index scores[.]"  *Id.* (emphasis added).  Plaintiff repeats the same allegations later in the Amended Complaint, again referencing only the "Dealership."  *See id.* ¶ 103.

Plaintiff's other allegations likewise focus on only the Dealership.  For instance, he alleges that he supplemented his internal report with a submission of

supposed "evidence," including "a copy of the ***Dealership's*** official policy to steer in-person customers into Clicklane deals."[8]   *Id.* ¶ 36 (emphasis added).  He alleges that Mr. Gage—an employee of the Dealership—gave "sweetheart deals" to friends and contacts.  *Id.*   Indeed, in the email chain Plaintiff attached to the Amended Complaint, Plaintiff's counsel acknowledged that Plaintiff's scope of knowledge was limited to instances that allegedly occurred at the Dealership: the email stated that Plaintiff "want[ed] to bring some potential accounting/compliance issues to your attention that [Plaintiff] raised ***at the store level***."  *Id.*, Ex. 3 at 11 (emphasis added); *see also id.* at 4 ("***Store management*** also regularly manipulates the customer satisfaction index scores . . . ." (emphasis added)).

Based on his observations at the single Dealership, Plaintiff attempts to impute the alleged misconduct at the Dealership to all nine Park Place Group dealerships without providing any factual allegations to support that contention.  For instance, Plaintiff's counsel claimed to Asbury via email that "there appear[ed] to be a coordinated effort ***among at least the Park Place dealerships*** . . . to improperly pump up the sales volume attributable to Clicklane."[9]  Ex. 3 at 5.  Plaintiff's counsel

---

[8] Exhibit 2 to Plaintiff's Amended Complaint is a management process guide specifically used by "Park Place Motorcars Arlington," *i.e.*, the Dealership.  *See* Am. Compl., Ex. 2.  Plaintiff does not allege that the document applies to—much less provides evidence of misconduct by—any unnamed dealerships or Asbury as a whole.

[9] Even if Plaintiff did (or could) attribute the conduct to all 9 of the Park Place Group dealerships, he ***admits*** in the Amended Complaint that all of the Park Place dealerships—in the aggregate—account for less than "10% of the dealerships currently using Clicklane."  *Id.*  In other words, more than 90% of the dealerships using Clicklane were outside of the Park Place Group.

then takes it a step further and represents that Plaintiff was "***unaware of any reason to think such conduct is limited to the Park Place brand***."  *Id.* (emphasis added). Plaintiff's counsel, however, provided no factual support for the rank speculation in the September 2022 email.  Nor does Plaintiff's Amended Complaint.

The Amended Complaint just repeats Plaintiff's counsel's bare allegation that, per Plaintiff's belief only, "there ***appeared to be*** a coordinated effort ***among at least the Park Place dealerships*** to improperly pump up the sales volume attributable to . . . Clicklane[.]"  *Id.* ¶ 33(3) (emphasis added).  It provides no support for that speculative allegation.  Plaintiff does not allege, for instance, that he had any knowledge of procedures used at other Park Place Group dealerships; whether those procedures were "proper" or "improper" in his subjective view (or in an objective view); whether those dealerships departed from proper procedures or conformed to improper procedures; or whether any other misconduct ***at all*** occurred at any of those dealerships.  In fact, Plaintiff does not provide any specific examples of sales or transactions in which such misconduct purportedly took place.  Instead, Plaintiff just guesses that the Dealership and other dealerships in the Park Place Group must have been engaging in securities or shareholder fraud on the part of their corporate parent, Asbury.[10]  Mere speculation cannot save the Amended Complaint from dismissal.

---

[10] Even if the Court were to accept Plaintiff's counsel's speculation and the Amended Complaint's conjecture on this issue, in 2022, the Park Place Group consisted of only 9 dealerships, representing only a fraction of Asbury's then 139-dealership footprint in the United States—the Group now makes up only 13 dealerships of Asbury's 157-dealership footprint in the United States.  In addition, Plaintiff does not contend

*Alaska Elec. Pension Fund v. Flotek Indus., Inc*., 915 F.3d 975, 981 (5th Cir. 2019)

("Conclusory allegations, unwarranted deductions, or legal conclusions are not well-pleaded facts for purposes of evaluating a complaint." (quotation omitted and alteration adopted)).

Even more tenuous than his attempt to accuse the Park Place Group of securities fraud, Plaintiff attempts to accuse Defendant Asbury *as a whole* of such fraud based only upon his limited observations and interactions at a single dealership. For example, Plaintiff alleges that his initial internal report in September 2022 "noted that certain SEC filings and investor presentations made material misrepresentations about Clicklane that likely violated" federal securities laws. *Id.* ¶ 34. Plaintiff also alleges that his counsel, in communication with the Dealership, "identified several examples of the misconduct . . . and flagged the need to discuss accounting and compliance concerns [Plaintiff] had about *the Company's* . . . operations." *Id.* ¶ 29. But the Amended Complaint bases—and makes clear that Plaintiff bases—this speculation on only "incidences" involving Mr. Gage, "the Dealership's books and records," and "store management." *E.g.*, *id.* ¶ 33. In short, the Amended Complaint makes clear that Plaintiff's only basis for believing that

---

that he had any knowledge whatsoever of goings-on at the other dealerships. For these reasons, it was objectively unreasonable for Plaintiff to believe that incidents of alleged accounting manipulation occurring at one Park Place Group dealership were occurring at other Park Place Group dealerships in 2022, much less that incidents (even if occurring) at only a small portion of Asbury dealerships amounted to securities or shareholder fraud on the part of the Asbury corporate enterprise.

Asbury committed securities fraud or fraud against its shareholders is unspecified, isolated incidents of purported misconduct he claims to have observed at one dealership. Such allegations are "too far removed from potentially harming the shareholders of a public company to be covered under § 1514A." *Brown v. Colonial Sav. F.A.*, No. 4:16-CV-884-A, 2017 WL 1080937, at *4 (N.D. Tex. Mar. 21, 2017) (dismissing a plaintiff's SOX claim on this basis). Put simply, nothing in Plaintiff's Amended Complaint "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> (b)   *It was not objectively reasonable for Plaintiff to believe that misconduct (even if) occurring at one dealership was material to Asbury so as to indicate fraud on a corporate level.*

For Plaintiff's factual allegations to be sufficient to plausibly infer that it was objectively reasonable for him to believe that the alleged conduct amounted to securities fraud by Asbury (the publicly traded corporate parent), the complained-of misconduct at the Dealership must have been material to Asbury's business. *See, e.g.*, *Ronnie*, 81 F.4th at 1352. Despite failing to provide sufficient facts to plausibly infer that the alleged conduct occurred outside of the Dealership, Plaintiff alleges (without any factual support) that the purported misconduct at the Dealership was supposedly intended to inflate the performance of Asbury's Clicklane platform on a corporate-wide scale. The Amended Complaint, however, contains no factual allegations sufficient to make that leap. Even accepting Plaintiff's allegation as true,

any such conduct at the Dealership would not evidence any actionable misstatement (or omission) by Asbury under the federal securities laws given the scale of Asbury's business across the country.  Simply put, the alleged misconduct is not material to Asbury, and thus Plaintiff's belief cannot be objectively reasonable as a matter of law.

Faced with these sorts of claims, several federal Courts of Appeals have dismissed SOX retaliation cases where the plaintiff's complained-of misconduct was immaterial to a corporation's business or was so minor that it could not be objectively reasonable for an individual in the plaintiff's position to believe it amounted to securities fraud or fraud against shareholders.  For instance, the Eleventh Circuit has similarly held that, when judging the reasonableness of a plaintiff's belief under a totality of the circumstances test, relevant considerations include "whether the employer acted with the requisite scienter, whether the misstatement was material, whether the misstatement was relied upon, and whether it yielded economic loss." *Ronnie*, 81 F.4th at 1351.  In that case, the plaintiff alleged that Office Depot had engaged in securities fraud by virtue of two accounting errors and that the company had violated SOX by terminating his employment after he reported those errors. *Id.* at 1349.  The court concluded that he had not engaged in protected activity because, among other reasons, he "fail[ed] to demonstrate key factors of fraud" including "the materiality of the . . . error." *Id.* at 1352. *See also*

*Rocheleau v. Microsemi Corp., Inc.*, 680 F. App'x 533, 536 (9th Cir. 2017) (holding that the plaintiff's belief was not objectively reasonable because defendant's alleged misconduct "f[ell] far short of the materiality standard for shareholder fraud"); *Day v. Staples, Inc.*, 555 F.3d 42, 57 (1st Cir. 2009) (holding that the plaintiff's belief was objectively unreasonable "because he . . . made no showing that [defendant's alleged misconduct] was material to shareholders").  Plaintiff here has made the same fatal mistake: he has not, and cannot, demonstrate how the misconduct he alleges to have occurred at the Dealership was sufficiently material to constitute securities or shareholder fraud given the scale of the purported misconduct relative to Asbury's corporate performance nationwide.

The Fourth Circuit has applied similar logic.  In *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 355 (4th Cir. 2008), the court affirmed dismissal a plaintiff's SOX retaliation claim where the defendant's alleged misrepresentation did not "amount to a material statement as necessary to violate § 10(b) of the Securities Exchange Act and [SEC] Rule 10b–5" given the scale of the defendant's business operations, noting that "[f]or a statement or omission to be actionable under § 10(b) . . . and [SEC] Rule 10b–5, it must concern a ***material fact***."   *Id.* (emphasis in bold added).  Applying the materiality standard set forth in *Basic, Inc. v. Levinson*, which requires "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of

information made available," *id.* (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)), the court held that materiality was not satisfied.  In particular, the Court concluded that where the defendant corporation operated "two dozen facilities worldwide and had revenues of over $14 billion," the plaintiff had failed to demonstrate how a purported failure to disclose to shareholders documentation deficiencies at ***one*** of the corporation's locations constituted a violation of federal securities laws because "none [of the allegedly false statements] would amount to a material statement" or would "have had a ***material*** impact on [the defendant's] finances[.]"  *Id.* (emphasis in bold added).  Here, even if Plaintiff was correct that the Dealership improperly "misclassified" sales to appear as if in-person customers purchased their vehicles through Clicklane or improperly booked sales as occurring at the end of the month, rather than the beginning of the next month, without any information about the conduct at ***any*** of Asbury's remaining 138 dealerships, it is not objectively reasonable for Plaintiff to believe that such conduct could be sufficiently material to a $15 billion company to constitute securities or shareholder fraud.

Similarly, in *Beacom v. Oracle America, Inc.*, the Eighth Circuit concluded as a matter of law that the plaintiff did not engage in protected activity where the alleged fraud concerning a $10 million discrepancy was "minor" for "a company that annually generate[d] billions of dollars."  825 F.3d 376, 381 (8th Cir. 2016).

That rationale applies with equal force here.[11]  As described above, in 2022—the period relevant to Plaintiff's claims—Asbury owned and operated 139 dealerships across 14 states, as well as collision centers and an F&I provider, and recorded more than $15 billion in aggregate revenue.[12]

Plaintiff has not and cannot demonstrate how a reasonable Asbury investor would conclude that the alleged misconduct occurring at a single dealership (out of 139 across the country) "significantly altered the total mix of information" about Asbury's performance as it reported in public statements regarding Clicklane. *Basic*, 485 U.S. at 231–32.  It simply is not objectively reasonable for Plaintiff, armed with the facts he knew at the time, to believe that manipulation of individual sales at a single dealership (or even a group of dealerships) would be sufficiently material to Asbury shareholders to be actionable as securities or shareholder fraud under federal law.

The Fifth Circuit has not addressed, under SOX, the issue of whether a plaintiff's belief that federal securities fraud occurred was objectively reasonable where the plaintiff fails to allege misconduct that is material with respect to the

---

[11] Plaintiff has made various factual allegations concerning Asbury's SEC filings and public statements regarding Clicklane.  Therefore, while *Beacom*'s procedural posture was review of a district court's grant of summary judgment to the defendant following fact discovery, the court's reasoning is still applicable to this case on review of a motion to dismiss, given the availability of such public filings and statements for the Court's review.  *See Lovelace*, 78 F.3d at 1018 n.1.

[12] Ex. 1, Asbury Automotive Grp., Inc., Annual Report (Form 10-K) (Mar. 1, 2023) at 8 (Fiscal Year 2022).

publicly traded parent company. Defendants respectfully urge the Court to follow the reasoning utilized by the First, Fourth, Eighth, Ninth, and Eleventh Circuits and dismiss Plaintiff's Amended Complaint because the underlying conduct about which Plaintiff complains was not material so as to amount to securities or shareholder fraud.

> **2.    Plaintiff has not alleged sufficient facts to plausibly allege that the purported misconduct was committed with the intent to defraud Asbury's shareholders.**

In addition to the basis for dismissal discussed above, the Court also should dismiss Plaintiff's Amended Complaint because it fails to plausibly allege that Defendants' purported misconduct was done with an intent to defraud Asbury shareholders. To the extent Plaintiff is alleging that Defendants' alleged misconduct constitutes a violation of provisions of federal law relating to fraud against shareholders as covered by § 1514A's sixth category, *see* Am. Compl. ¶ 102, the Fifth Circuit requires that an employee must reasonably believe that his or her employer acted with "a mental state embracing intent to deceive, manipulate, or defraud" its shareholders.[13]  *Allen*, 514 F.3d at 479–80; *see also Sequeira v. KB Home*, 716 F. Supp. 2d 539, 550 (S.D. Tex. 2009) (citing *Allen*, 514 F.3d at 477–78).

---

[13] Defendants further contend that *Allen*'s mental-state requirement applies also to § 1514's fourth category, as securities fraud likewise requires that a plaintiff plead and prove scienter.

In other words, a plaintiff must sufficiently plead that the defendant acted with scienter vis-à-vis the defendant's shareholders.

Plaintiff has failed to do so here. He does not make a single factual allegation that any of the Defendants acted with an intent to deceive, manipulate, or defraud Asbury shareholders. The Amended Complaint contains no allegations (factual or otherwise) about Mr. Gage's intent.[14] As to the corporate Defendants, Plaintiff generally must impute corporate scienter from the scienter of a senior corporate officer acting on behalf of the corporation in making the statement:

> For purposes of determining whether a statement made by the corporation was made by it with the requisite Rule 10(b) scienter we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004).

---

[14] To the extent that Plaintiff alleges that Mr. Gage committed securities or shareholder fraud, Mr. Gage is not the "maker" of any alleged misstatements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (holding that a defendant must be the "maker" of an alleged misstatement or omission under Section 10(b) and Rule 10b-5 for liability to attach, *i.e.* "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Nor is Mr. Gage a "control person" such that he could be held liable under Section 20(a) of the Exchange Act. *See* 15 U.S.C. § 78t(a) (establishing standard of liability for "controlling persons" under the Act); 17 C.F.R. § 230.405 (defining "control" under the Act as "the possession, direct or indirect, of the power to **direct or cause the direction of the management and policies** of a person, whether through the ownership of voting securities, by contract, or otherwise." (emphasis added)); *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981) (noting that the Fifth Circuit follows the plain meaning of the statute to define "control," meaning to have the "power to directly or indirectly **control or influence corporate policy**" (emphasis added)); *see also Southlake*, 365 F.3d at 383–84 ("Control person liability is secondary only and cannot exist in the absence of a primary violation." (citing *Lovelace*, 78 F.3d at 1021 n.8)).

But Plaintiff has pleaded no plausible factual allegation as to the scienter of any corporate officer or director whose scienter could be imputed to the corporate Defendants. Nor do any of his factual allegations permit a plausible inference that Defendants acted with such intent. While the Amended Complaint avers that the Defendants "likely violated" the federal securities laws and/or "may" have attempted to improperly inflate Asbury's stock price, Am. Compl. ¶ 34, 37, those allegations do not raise a plausible inference as to the scienter of Asbury's corporate officers or directors. This is simply not enough under Fifth Circuit precedent or Rule 8.

## VII.   CONCLUSION

The Court should dismiss Plaintiff's Amended Complaint with prejudice because, even after amending the Complaint, Plaintiff fails to allege sufficient facts to plausibly allege the first element of a SOX retaliation claim—engagement in protected activity. ***First***, it was not objectively reasonable, under the circumstances alleged, for Plaintiff to believe that Defendants committed securities fraud or fraud upon Asbury shareholders. ***Second***, Plaintiff has not made any allegation that the purported fraud or misconduct was committed with the intent to defraud Asbury shareholders. For either or both of these reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice for failure to state a claim upon which relief may be granted.

Respectfully submitted,

Dated:         April 26, 2024

By: /s/ *Evan P. Singer*
    Evan P. Singer
    Texas State Bar No. 24037501
    JONES DAY
    2727 North Harwood Street
    Dallas, TX 75201.1515
    Telephone: +1.214.220.3939
    Facsimile: +1.214.969.5100
    epsinger@jonesday.com

    *Attorney for Defendants Asbury*
    *Automotive Group, Inc.; Asbury*
    *Arlington MB, LLC; and Malcolm Gage*

## **CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing document complies with Standing Order Section II.A. and contains 5,891 words, not including the case caption, table of contents, table of authorities, signature block, and certificates, verified by word-processer register.

*/s/ Evan P. Singer*
Evan P. Singer


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 26, 2024, the foregoing document was electronically submitted with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2):

*/s/ Evan P. Singer*
Evan P. Singer

## **CERTIFICATE OF CONFERENCE**

Pursuant to the Court's Standing Order Section II.C.3, The undersigned hereby certifies that on March 14, 2024, Defendant's counsel conferred with Kent Piacenti, counsel for Plaintiff, regarding Defendants' intention to file a Motion to Dismiss pursuant to Rule 12(b)(6) and the bases for such motion.  Plaintiff's counsel filed an advisory of Plaintiff's intent to amend his Complaint on April 5, 2024, and filed an Amended Complaint on April 12, 2024.  The Amended Complaint is still deficient.

*/s/ Evan P. Singer*
Evan P. Singer