**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL TUPAC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **NO. 3:24-CV-00104-O** |
| | § | |
| **ASBURY AUTOMOTIVE GROUP INC., ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION AND ORDER**

Before the Court is the motion of Defendants, Asbury Automotive Group, Inc., Asbury Arlington MB, LLC, and Malcolm Gage, for summary judgment (ECF No. 55). Having considered the motion, the response, the reply, the record, and applicable authorities, the Court concludes that the motion should be **GRANTED**.

## I. BACKGROUND[1]

Plaintiff was the new car sales manager for Park Place Motorcars Arlington from October 19, 2020, to November 14, 2022.[2] Malcolm Gage was the general manager of the dealership and made the ultimate decision to terminate Plaintiff.[3]

Defendant Asbury Automotive Group, Inc. ("Asbury"), is a publicly traded company that as of December 31, 2022, owned 139 new vehicle dealerships and related businesses throughout

[1] To the extent that Plaintiff failed to respond to the extensive "Statement of Facts" section of Defendants' summary judgment memorandum (ECF No. 56 at 5–30), the Court accepts those facts as true. *W. Power, Inc. v. TransAmerican Power Prods., Inc.*, 316 F. Supp. 3d 979, 986 (S.D. Tex. 2018) (court may accept as undisputed the facts a movant provides in support of its motion when the opponent chooses not to respond) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 173–74 (5th Cir. 1988)).
[2] Defs.' App. 383, ECF No. 57.
[3] Defs.' App. 539, 572, ECF No. 57.

the United States.[4] Asbury acquired Park Place Motorcars Arlington in August 2020.[5] For fiscal year 2022, Asbury's consolidated revenue was $15.43 billion.[6]

In December 2020, Asbury announced the roll-out of "Clicklane," an online sales tool to allow customers to purchase a car "100% online."[7] It sped up the buying process by allowing customers to shop for and select a vehicle, finance the purchase, agree to trade in an existing vehicle, and schedule delivery all online.[8] The car would be picked up at the dealership or delivered to the customer and, in some states like Texas, the customer would have to physically sign paperwork.[9] In early 2022, Gage drafted a memo to help the sales team understand how Clicklane worked and remind them that not all deals would be eligible.[10] Asbury described Clicklane in its 2022 Form 10-K.[11] Plaintiff's job duties did not include reviewing any Asbury filings with the Securities and Exchange Commission, press releases, or any other public filings.[12] In fact, he had never read any Form 10-K or SEC filing of any kind.[13] Nevertheless, on September 9, 2022, Plaintiff's counsel emailed an in-house attorney for Asbury alluding to securities fraud.[14] Four days later, he submitted a report to the SEC's "Tips, Complaints and Referrals" system alleging fraud with regard to Clicklane.[15] The SEC never contacted Asbury and Asbury did not receive a Wells Notice or subpoena concerning Plaintiff's allegations.[16]

[4] Defs.' App. 390, ECF No. 57.
[5] Defs.' App. 390, ECF No. 57.
[6] Defs.' App. 419, ECF No. 57.
[7] Defs.' App. 59, 547–48, ECF No. 57.
[8] Defs.' App. 547–49, 660–61, ECF No. 57.
[9] Defs.' App. 548–49, 661, ECF No. 57.
[10] Defs.' App. 375–76, ECF No. 57; ECF No. 42, Ex.2.
[11] Defs.' App. 384–530 (passim), ECF No. 57.
[12] Defs.' App. 53–54, ECF No. 57.
[13] Defs.' App. 58, ECF No. 57.
[14] ECF No. 42, Ex. 3.
[15] ECF No. 42, Ex. 4.
[16] Defs.' App. 843–44, ECF No. 58. Asbury is not aware of any SEC investigation into Plaintiff's allegations. *Id.*

Plaintiff had a number of performance issues while employed at the dealership.[17] These included multiple instances of not showing up on time for his designated shift, oversharing personal information, lack of attention to detail and discrepancies in commissions costing the dealership money, being short-tempered and snappy, being disrespectful to customers, adversely reacting to a performance review and telling team members he was going to "take down the store," harassing other employees, removing confidential documents, and covering up an odometer discrepancy.[18] The decision to terminate Plaintiff was based on two years of performance issues and had nothing to do with his complaint to the SEC regarding Clicklane.[19]

## II. LEGAL STANDARD

The Court must grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the Court that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Once the movant has carried its burden, the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). *See Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir.

---

[17] ECF No. 56 at 11–30 (citing record references).
[18] *Id.*
[19] Defs.' App. 379–80, ECF No. 57.

2006) (it is not the Court's duty to sift through the record in search of evidence to support the nonmovant's opposition to summary judgment). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. ANALYSIS

Plaintiff asserts a single claim for retaliation under 18 U.S.C. § 1514A of the Sarbanes-Oxley Act of 2002. ECF No. 42. To prevail on such a claim, an employee must prove that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008). If the employee establishes those elements, the employer can avoid liability if it can prove by clear and convincing evidence that it would have taken the same action in the absence of the protected behavior. *Id.* at 476. In this case, Defendants maintain that Plaintiff cannot establish the first and fourth elements of his claim. Further, even assuming he could establish all of the required elements, Defendants have shown by clear and convincing evidence that they would have terminated him in any event. ECF No. 55.

Plaintiff alleges that he engaged in protected activity "when he informed Asbury's Dean Calloway and Jed Milstein about conduct that he reasonably believed violated 'provision[s] of Federal law relating to fraud against shareholders.'" ECF No. 42, ¶ 114. To prove that the activity was protected under the statute, Plaintiff must prove that he held a reasonable belief when he reported the activity that the conduct constituted securities fraud, violation of SEC rules and regulations, or fraud against shareholders. 18 U.S.C. § 1514A. His belief must be both subjectively

and objectively reasonable. *Allen*, 514 F.3d at 477. The law is not meant to protect those whose complaints are not undertaken in subjective good faith. *Day v. Staples, Inc.*, 555 F.3d 42, 54 (1st Cir. 2009). Here, the summary judgment evidence establishes that Plaintiff had no idea whether the conduct he reported violated securities laws; rather, as he admits, he counted on his attorney to tell him. ECF No. 61 at 11. Moreover, his own pleading reflects that he was bringing to the dealership's attention anything he could in an attempt to forestall his termination. *See, e.g.*, ECF No. 42-1, Ex. 3. Plaintiff does not dispute that his knowledge was limited to the activities at his particular place of employment and not on activities at any other dealership.[20] He has not pointed to any evidence to show that his complaint "definitively and specifically relate[d]" to mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the SEC, or any provision of federal law relating to fraud against shareholders. *Allen*, 514 F.3d at 476–77. At the time of Plaintiff's alleged protected activity, his dealership was one of 139 new vehicle dealerships across 14 states owned by Asbury.[21] For the year ended December 31, 2022, it had consolidated revenue of $15.43 billion.[22] He has made no attempt to explain why the matters he raised—that the sales process could not be completed 100% online due to Texas's wet-ink signature requirement and that the total process took a few minutes longer than advertised—would be material to a shareholder. *See Livingston v. Wyeth, Inc.*, 520 F.3d 344, 356 (4th Cir. 2008) (plaintiff failed to produce evidence that reasonable employee in his position could have believed conduct constituted violation of securities laws where defendant had two dozen facilities worldwide and revenues of over $14 billion).

---

[20] Pl.'s App. 109, ECF No. 62.
[21] Defs.' App. 390, ECF No. 57.
[22] Defs.' App. 419, ECF No. 57.

Even if Plaintiff had raised a genuine fact issue as to his protected activity, he has not shown that the protected activity was a contributing factor to his termination. His response in this regard is a brief three sentences encompassing two arguments. ECF No. 61 at 11. First, he says the explanation for his termination changed over time and was inconsistently stated, citing "misconduct," "undisputed and illegal bank and odometer fraud," and "gross error." *Id.* He cites to the declaration of Jennifer Stapleton, who worked as a Sales Experience Manager at the time Plaintiff was terminated. *Id.*[23] Stapleton wrongly assumes that Plaintiff was terminated for making an erroneous odometer entry when submitting a deal to potential lenders and says that another employee made a similar mistake and no disciplinary action was taken against him.[24] Plaintiff does not cite any evidence to show that the two employees were similarly situated. He does not dispute all the evidence showing that he did engage in misconduct for which he was disciplined a number of times and that he lied about the odometer statement,[25] which is the "gross error" he references.[26] In sum, he fails to show any inconsistency in the reasons for his termination.[27] Second, as proof his protected conduct was a contributing factor to his termination, he alleges that no one was willing to sign his termination form, citing to the unsigned form itself. *Id.* The record does not support the contention that the failure to sign the form had any significance.[28]

Finally, even if Plaintiff had been able to make out a *prima facie* case, and he has not, Defendants have established by clear and convincing evidence that they would have terminated

---

[23] Citing Pl.'s App. 6, ECF No. 62.
[24] Pl.'s App. 5–6, ECF No. 62.
[25] Plaintiff said he had correctly submitted the mileage and the error was on Ally's part. Defs.' App. 653–54, ECF No. 57.
[26] Defs.' Br. 27–30, ECF No. 56.
[27] The reasons for Plaintiff's termination are summed up in the Affidavit of Malcolm Gage, who made the decision after consulting the human resources department and outside legal counsel. Defs.' App. 379–80, ECF No. 57.
[28] *See* Defs.' App. 280–81, 284–85, 330–31, ECF No. 57.

Plaintiff in any event.[29] Plaintiff has not cited any evidence sufficient to raise a genuine issue of material fact in this regard. ECF No. 61 at 11–12.

## VI. CONCLUSION

For the reasons discussed, Defendants' motion for summary judgment is **GRANTED**; Plaintiff **TAKE NOTHING** on his claims; and, such claims are **DISMISSED**.

**SO ORDERED** on this **29th day** of **October 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[29] *See* ECF No. 63 at 6–7 (citing record references).